# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**LATASHA R. ARMSTEAD,**

  Plaintiff,

  v.               Case No. 19-CV-101

**ADAM KOLLMANN,**

  Defendant.

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

  Latasha Armstead, a Wisconsin inmate representing herself, filed a lawsuit under 42 U.S.C. § 1983. Armstead alleges that Correctional Officer Adam Kollmann violated the Eighth Amendment when he ignored her threats of self-harm. Before me are the parties' motions for summary judgment. For the reasons explained below, I will deny Armstead's motion, grant Officer Kollmann's motion, and dismiss this case.

## RELEVANT FACTS

  The facts are relatively straightforward, although the parties recall how they unfolded differently. On August 26, 2018, Officer Kollmann was working in the control center of the MC Unit at Taycheedah Correctional, where Armstead was incarcerated. (ECF No. 23 at ¶ 2.) That day, the day space (the common area of the

MC Unit) was closed because the space was needed to assist in moving twelve inmates to other institutions. (*Id.* at ¶ 5.)

At about 6 p.m., Armstead pushed the emergency call button in her cell to speak with the officer at the unit desk. (ECF No. 23 at ¶ 6.) Officer Kollmann answered, and, according to him, she asked him why the day space was closed. (*Id.*) Officer Kollmann asserts that he explained the reason to her. (*Id.*) About five minutes later, she called again to complain about the day space being closed. (*Id.* at ¶ 7.) Officer Kollmann states that Armstead asked to see a "white shirt," that is, a lieutenant or captain. (*Id.*) Officer Kollmann states that he asked Armstead if she had any thoughts of self-harm, and she responded only that she wanted to see a white shirt. (*Id.*) According to Officer Kollmann, Armstead never said anything about wanting to harm herself and she did not request to speak to psychological services. (*Id.*) After Officer Kollmann discussed the situation with Sergeant Molina (who is not a defendant), Sergeant Molina determined there was no reason to contact a supervisor or any medical personnel. (*Id.*)

Officer Kollmann explains that Armstead pressed her emergency call button several more times over the course of the next hour. (ECF No. 23 at ¶ 8.) Each time, she demanded to speak to a white shirt about the day space being closed. (*Id.*) Officer Kollmann states that at no time did Armstead give any indication that she intended to harm herself. (*Id.*) Accordingly, neither he nor Sergeant Molina ever contacted a supervisor. (*Id.*)

2

As noted, Armstead remembers her interactions with Officer Kollmann differently. Although Armstead did not directly respond to Officer Kollmann's proposed findings of fact, she did file a sworn amended complaint and two declarations in support of her motion for summary judgment. (ECF Nos. 13, 29, 30-1 at 17.) Armstead asserts that she pressed her emergency call button four times to alert staff that she was upset about the day space being closed. According to Armstead, each time she spoke to Officer Kollmann, she told him that she was "having a mental medical emergency and d[id]n't feel safe in [her] room." (ECF No. 13 at 2.) Armstead also asserts that she informed him of her mental health status and said she was going to cut herself if she did not get out of the room and see psychological services. (*Id.*; ECF No. 29 at ¶ 2.) She asserts that Kollmann told her that the sergeant was busy and, if she wanted to see psychological services, she "needed to drop a slip." (ECF No. 30-1 at 17.)

Armstead explains that, when help did not come, she cut her arm with a razor. (ECF No. 29 at ¶ 3.) Armstead submitted affidavits from three prisoners. (ECF No. 30-1 at 19-21.) None of the prisoners were housed in the same cell as Armstead on the date in question, and none witnessed Armstead cut her arm. (*Id.*) The prisoners merely state that Armstead told them that she had cut her arm. (*Id.*)

Officer Kollmann asserts that neither he nor Sergeant Molina are aware of Armstead injuring herself that night. (ECF No. 23 at ¶ 19.) He explains that there is no evidence that Armstead cut her arm that night. Armstead never requested or received medical attention related to cuts on her arms. (*Id.* at ¶¶ 20-21.) The health

3

services request slip she submitted that night did not indicate that she had engaged in any self-harm or that she needed any treatment for cuts or other injuries. (*Id.* at ¶ 23.) Armstead said only, "Also some thing took place today and I had a mental medical emergency and was denied help. Just a FYI." (ECF No. 26-1 at 3.)

Further, the next day, Armstead saw Dr. Mary Ferguson in psychological services. (ECF No. 23 at ¶ 24.) She states that Armstead never claimed that she had cut herself the night before; she stated only that she had banged her head on the wall, but her cellmate had helped her calm down. (*Id.*) Dr. Ferguson explains that she is aware of Armstead's history of cutting herself, so she is confident that she would have included information in her notes if she had observed any evidence suggesting that Armstead had cut herself the night before. (*Id.*)

## SUMMARY JUDGMENT STANDARD

Summary judgment is required where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986); *Ames v. Home Depot U.S.A., Inc.*, 629 F.3d 665, 668 (7th Cir. 2011). When considering a motion for summary judgment, the court takes evidence in the light most favorable to the non-moving party and must grant the motion if no reasonable juror could find for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 255 (1986). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *Anderson*, 477

U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.

A party asserting that a fact cannot be disputed or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1)(A)-(B). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

## ANALYSIS

Armstead asserts that Officer Kollmann ignored her threats of self-harm, which resulted in her cutting her arm. The Eighth Amendment prohibits "cruel and unusual punishments" and "imposes a duty on prison officials to take reasonable measures to guarantee an inmate's safety and to ensure that inmates receive adequate care." *Phillips v. Diedrick*, 18-C-56, 2019 WL 318403 at *2 (E.D. Wis. Jan. 24, 2019) (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). While a prison official's deliberate indifference to a prisoner's substantial risk of serious harm violates the Eighth Amendment, not every claim by a prisoner that she did not receive

5

adequate care will succeed. *Id.* (citing *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976)). To survive summary judgment, Armstead must provide evidence from which a jury could reasonably conclude that "(1) h[er] medical need was objectively serious, and (2) the defendant[] consciously disregarded this need." *Berry v. Lutsey*, 780 Fed. App'x 365, 368-69 (7th Cir. 2019) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).

To be sure, prison staff have a duty to prevent inmates from causing serious harm to themselves. *Pittman ex rel. Hamilton v. Cty. of Madison*, 746 F.3d 766, 775-76 (7th Cir. 2014). However, before an official will be liable for ignoring a risk of self-harm, the "risk of future harm must be sure or very likely to give rise to sufficiently imminent dangers." *Davis-Clair v. Turck*, 714 Fed. A'ppx 605, 606 (7th Cir. 2018) (internal quotation marks omitted). Further, although the Seventh Circuit has not directly addressed this point, discussions in dicta and holdings by other courts suggest that the Constitution obligates prison officials to step in and prevent sane prisoners from harming themselves only when the threatened harm is sufficiently serious. *See, e.g., Freeman v. Berge*, 441 F.3d 543, 546-47 (7th Cir. 2006) (explaining that "at some point," to ensure a prisoner is not "seriously endangering his health," prison officials would have a duty and right to step in and force a prisoner on a hunger strike to take nourishment); s*ee also Davis v. Gee*, 14-cv-617, 2017 WL 2880869 at *3-4 (W.D. Wis. July 6, 2017) (holding that, to show a constitutional injury, the harm must present an objectively, sufficiently serious risk of serious damage to future health and swallowing a handful of Tylenol fails to do that).

Here, I find that Officer Kollmann is entitled to summary judgment because Armstead fails to present evidence from which a jury could reasonably conclude that she faced a risk of serious harm. Armstead concedes that she was angry over the day space being closed. She explains that, when she feels frustrated or angry, she may cut herself in an attempt to relieve her emotional pain by distracting herself with physical pain. Armstead further explains that she wanted to vent her anger to someone in psychological services, and if she did not get what she wanted, she would relieve her frustration through cutting. However, the evidence does not support a conclusion that she followed through on her threats. Armstead says she cut herself and three inmates aver that Armstead told them she cut herself, but those statements are contradicted by the record taken as a whole. The U.S. Supreme Court has explained that, "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (7th Cir. 2007).

Armstead submitted a health services request later that night, in which she states only that a "mental medical emergency" was ignored; she made no mention of injuring herself, and she received no treatment for physical injuries. Further, the following day, she was seen by her psychologist, who states that Armstead made no mention of cutting herself and that she saw no evidence of Armstead having recently cut herself. Her doctor states that, given Armstead's history of self-harm, she is

confident she would have made note of injuries in her summary of their meeting had she noticed such injuries. Armstead makes no attempt to address this evidence.

Accordingly, given that the record blatantly contradicts Armstead's statements that she suffered a physical injury and given that Armstead makes no attempt to explain the contradictions, no jury could reasonably conclude that she faced an objectively serious risk of harm when she expressed to Officer Kollmann that she felt like cutting herself. In other words, regardless of how Kollmann responded, Armstead's claim fails because she has presented no evidence to support a conclusion that she faced a risk of serious harm. *See Davis*, 2017 WL 2880869 at *4 (dismissing the plaintiff's claim because the plaintiff failed to submit objective evidence showing that the officer's failure to intervene actually caused an objective risk of serious damage to his future health). Officer Kollmann is entitled to summary judgment on that basis alone.

However, even if Armstead had presented evidence that she faced an objective risk of serious harm when she threatened to cut herself, she fails to present evidence from which a jury could conclude that Officer Kollmann was deliberately indifferent to that risk. Deliberate indifference requires more than negligence or even gross negligence; it requires that Armstead provide evidence from which a jury could reasonably conclude that Officer Kollmann knew of, yet disregarded, an excessive risk to Armstead's health or safety. *Phillips*, 2019 WL 318403 at *4 (citing *Farmer*, 511 U.S. at 835). Armstead presents no such evidence. As to whether Officer Kollmann knew of an excessive risk to Armstead's safety, the Seventh Circuit

8

recently held that a prisoner's statements that he felt suicidal and wanted to talk to a crisis counselor were insufficient to establish that the officer knew the plaintiff faced a substantial risk of suicide. *Johnson v. Garant*, 19-1383, 2019 WL 6652126 at *2 (7th Cir. Dec. 6, 2019). Armstead alleges that she told Officer Kollmann that she felt unsafe in her room, wanted to talk to psychological services, and felt like cutting herself. These statements, spoken in the context of Armstead's frustration over the closing of the day room, were insufficient to put Officer Kollmann on notice that Armstead posed a serious risk to her safety.

Further, the evidence does not support a conclusion that Officer Kollmann disregarded any risk to Armstead's safety. The parties agree that, despite Armstead's improper use of her emergency call button to complain about the day space being closed, Officer Kollmann answered her repeated calls on that topic. Also, Armstead does not dispute Officer Kollmann's assertions that he specifically asked her if she was thinking of harming herself and that he consulted with Sergeant Molina about Armstead's complaints, and it was Sergeant Molina, not Officer Kollmann, who decided that it was unnecessary to convey Armstead's complaints to a supervisor. Finally, Armstead states that, in response to her request to talk to someone in psychological services about her frustration over the day space being closed, Officer Kollmann directed her to fill out a psychological services request slip. In short, the only reasonable conclusion a jury could reach is that Officer Kollmann reasonably responded to Armstead, just not in the way she wanted him to. That, however, is insufficient to support a finding of deliberate indifference.

**IT IS THEREFORE ORDERED** that Armstead's motion for summary judgment (ECF No. 27) is **DENIED** and Officer Kollmann's motion for summary judgment (ECF No. 21) is **GRANTED**.

**IT IS FURTHER ORDERED** that this case is **DISMISSED with prejudice**.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. *See* Federal Rule of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Federal Rule of Appellate Procedure 4(a)(5)(A).

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated in Milwaukee, Wisconsin this 14th day of January, 2020.

BY THE COURT:

*s/Nancy Joseph*
NANCY JOSEPH
United States Magistrate Judge